**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| LAURIE C. EDDY and Husband,<br>GEORGE M. EDDY,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br>AMAZON.COM SERVICES, LLC,<br>AMAZON LOGISTICS, INC.,<br>VALPARAISO TRUCKING CORP., and<br>ANTOINIER JOSEPH, a/k/a<br>DIEUDONNE JOSEPH,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. ____________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

COME NOW Plaintiffs, Laurie C. Eddy and George M. Eddy, by and through their attorneys, and for their Complaint against Defendants AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, AMAZON LOGISTICS, INC., VALPARAISO TRUCKING CORP, and ANTOINIER JOSEPH, a/k/a DIEUDONNE JOSEPH, respectfully show unto the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This case arises out of a tractor-trailer crash that occurred on May 11, 2025, when a tractor-trailer controlled by AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, and AMAZON LOGISTICS, INC. (hereinafter, the "AMAZON Defendants"), and driven by ANTOINIER JOSEPH, a/k/a DIEUDONNE JOSEPH, operating for VALPARAISO TRUCKING CORP, caused a multi-vehicle collision and pileup (the "Crash"). As a result of the Crash, Plaintiff

Laurie C. Eddy suffered serious bodily injury, and her husband, George Eddy, suffered the loss of companionship, services, and consortium of his wife.

2. Plaintiff Laurie C. Eddy is a resident and citizen of Jefferson County, Colorado.

3. Plaintiff George M. Eddy, the spouse of Laurie C. Eddy, is a resident and citizen of Jefferson County, Colorado.

4. At all times material hereto, AMAZON.COM, INC., was and is a corporation incorporated under the laws of Delaware with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.

5. AMAZON.COM, INC., along with its subsidiaries, is the world's largest online retailer that relies on and advertises immediate delivery of products ordered by customers, sometimes to be delivered within hours. To meet their customer service promises and delivery deadlines AMAZON.COM, INC., has distribution, warehouse, and storage facilities throughout the country, including Tennessee, and contracts with thousands of interstate and intrastate motor carriers to position those goods in their distribution centers for rapid delivery and to then deliver those goods to its end customers.

6. AMAZON.COM, INC., was transacting substantial business in Tennessee on the date of the Crash and is subject to the jurisdiction and venue of this Court.

7. According to the Washington Secretary of State, AMAZON.COM, INC., can be served with a copy of the Summons and Complaint by and through its registered agent for process, Corporation Service Company, 300 Deschutes Way SW, Suite 208, MC-CSC1, Tumwater, WA 98501.

8. At all times material hereto, AMAZON.COM SERVICES, LLC ("AMAZON.COM SERVICES") was and is a limited liability company organized under the laws

of Delaware with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.

9. AMAZON.COM SERVICES is authorized to do business in the State of Tennessee and is registered with the Tennessee Secretary of State as a foreign limited liability company.

10. Upon information and belief, AMAZON.COM SERVICES is a wholly owned subsidiary of Defendant AMAZON.COM, INC. and a subsidiary, sister entity, or affiliate of AMAZON LOGISTICS, INC.

11. AMAZON.COM SERVICES is the product and goods part of the Amazon operation and relies on and advertises immediate delivery of products ordered by customers, sometimes to be delivered within hours. To meet their customer service promises and delivery deadlines, AMAZON.COM SERVICES has distribution, warehouse, and storage facilities throughout Tennessee and contracts with thousands of interstate and intrastate motor carriers to position those goods in their distribution centers for rapid delivery and to then deliver those goods to its end customers.

12. AMAZON.COM SERVICES was transacting substantial business in Tennessee on the date of the Crash and is subject to the jurisdiction and venue of this Court.

13. According to the Tennessee Secretary of State, AMAZON.COM SERVICES can be served with a copy of the Summons and Complaint by and through its registered agent for process, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

14. At all times material hereto, Defendant AMAZON LOGISTICS, INC. ("AMAZON LOGISTICS") was and is a corporation incorporated under the laws of Delaware with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.

15. Upon information and belief, AMAZON LOGISTICS is a wholly owned subsidiary of Defendant AMAZON.COM, INC. and a subsidiary, sister entity, or affiliate of AMAZON.COM SERVICES.

16. AMAZON LOGISTICS is authorized to do business in the State of Tennessee and is registered with the Tennessee Secretary of State as a foreign for-profit corporation.

17. AMAZON LOGISTICS is the transportation and logistics subsidiary of AMAZON.COM, INC., and is part of the world's largest online retailer that relies on and advertises immediate delivery of products ordered by customers, sometimes to be delivered within hours. To meet their customer service promises and delivery deadlines, AMAZON LOGISTICS has or regularly arranges deliveries to distribution, warehouse, and storage facilities throughout Tennessee and contracts with thousands of interstate and intrastate motor carriers to position Amazon goods in their distribution centers for rapid delivery and to then deliver those goods to its end customers.

18. AMAZON LOGISTICS was transacting substantial business in Tennessee on the date of the Crash and is subject to the jurisdiction and venue of this Court.

19. At all times material hereto, Defendant AMAZON LOGISTICS was a federally registered motor carrier engaged in interstate commerce operating under U.S. DOT No. 2881058 and Motor Carrier No. MC-826094 exercising control, dispatch, supervision, and authority over commercial motor vehicles and drivers, including the tractor-trailer involved in this Crash.

20. According to the Tennessee Secretary of State, AMAZON LOGISTICS can be served with a copy of the Summons and Complaint by and through its registered agent for process, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

21. General personal jurisdiction over each of the AMAZON Defendants is proper under the Tennessee Long Arm Statute and the Due Process Clause because each Amazon Defendant has engaged in substantial, continuous, and systematic activity in Tennessee, rending them essentially “at home” in Tennessee and subject to suit in Tennessee for any cause. *See* T.C.A. §§ 20-2-214(a)(1)-(6); 20-2-223(a)(1)-(4).

22. Each of the Amazon Defendants does “substantial and not isolated activity” in Tennessee, such that each can be haled into court in Tennessee for any litigated dispute. Their activities include, but are not limited to:

(a) being registered to do business in Tennessee;

(b) owning and/or leasing property in Tennessee;

(c) operating distribution centers in Tennessee;

(d) engaging in millions of sales to and deliveries to Tennessee consumers;

(e) contracting with Tennessee based motor carriers and truck drivers to deliver goods in other states;

(f) contracting for the delivery of products it sells in Tennessee;

(g) utilizing tractor-trailers to deliver products it sells on the interstates, highways, and roadways in Tennessee;

(h) regularly engaging in the ultra-hazardous activity of arranging for the transportation of goods and packages in interstate and intrastate commerce over Tennessee roads and to and for Tennessee residents and businesses;

(i) providing services to its customers using commercial transportation services in Tennessee that included transporting goods in interstate and intrastate commerce; and

(j) otherwise conducting substantial business in the state of Tennessee daily.

23. The AMAZON Defendants, through their continuous and systematic contacts which were undertaken deliberately, repeatedly, and for substantial economic benefit, have purposefully availed themselves of the privilege of conducting business in Tennessee, and could reasonably anticipate being haled into court in Tennessee for any litigated dispute.

24. Specific personal jurisdiction over each AMAZON Defendant is proper under the Tennessee Long Arm Statute and constitutional due process, because each AMAZON Defendant, directly and through its agents, representatives, contractors, subsidiaries, and employees committed tortious acts within the state of Tennessee that caused serious bodily injury to Plaintiff Laurie Eddy.

25. The aforementioned tortious acts include, without limitation, the following, and each contributed to cause the Crash:

(a) negligently hiring, retaining, qualifying, and entrusting unfit, unqualified, unvetted, untrained, and/or dangerous drivers and trucking companies engaged in commercial transportation on interstate roadways;

(b) breaching duties owed for proper training and/or supervision of drivers;

(c) breaching duties owed in the use, provision, inspection, maintenance, and repair of equipment involved in commercial transportation on interstate roadways;

(d) contracting with the for-hire interstate motor carrier DEFENDANT VALPARAISO TRUCKING CORP. ("VALPARAISO");

(e) improperly qualifying and investigating Defendants VALPARAISO and ANTOINIER JOSEPH ("JOSEPH"), a/k/a DIEUDONNE JOSEPH, which allowed them to drive for AMAZON.COM, INC. despite their poor safety record;

(f) failing to monitor the safety record and performance of VALPARAISO and JOSEPH after they were initially approved to transport goods for AMAZON.COM, INC.; and

(g) continuing to use VALPARAISO and JOSEPH despite their poor safety record.

26. The exercise of specific personal jurisdiction over each AMAZON Defendant also comports with constitutional due process because this action arises directly out of their purposeful, Tennessee-directed conduct, including that the Crash occurred in Tennessee, and each AMAZON Defendant has sufficient minimum contacts with Tennessee such that maintaining this action does not offend traditional notions of fair play and substantial justice.

27. The AMAZON Defendants intentionally contracted with, engaged, and directed trucking companies and logistics providers; placed drivers, commercial motor vehicles, and transportation equipment onto interstate highways, including Tennessee highways; and directed commercial transportation activities that created a foreseeable risk of harm to the motoring public. Through these deliberate activities, the AMAZON Defendants created and managed the very risks that materialized in the Crash and are the direct and proximate result of Plaintiffs' damages, rendering it reasonably foreseeable that they would be haled into a Tennessee court to answer for the claims arising from these decisions and actions.

28. At all times material hereto, Defendant VALPARAISO was and is a Florida for-profit corporation with a principal place of business located at 4740 NW 24th Ct., Apt. A211, Lauderdale Lakes, Florida 33313.

29. According to the Florida Secretary of State, Defendant VALPARAISO can be served with a copy of the Summons and Complaint by and through its registered agent, Wisner Florestant, 4740 NW 24th Ct., Apt. A211, Lauderdale Lakes, Florida 33313.

30. At all times material hereto, Defendant VALPARAISO was a for-hire motor carrier registered with the U.S. Department of Transportation with U.S. DOT No. 2912333 and Motor Carrier No. MC-981389.

31. According to the U.S. Department of Transportation, Defendant VALPARAISO can be served with a copy of the Summons and Complaint by and through its registered BOC-3 agent, Mitchell & Associates, 4650 Beaver Ridge Road, Knoxville, TN 37931.

32. At all times material hereto, Defendant JOSEPH was a resident and citizen of Florida.

33. Upon information and belief, Defendant JOSEPH can be served with a copy of the Summons and Complaint at 426 NW 8th Ave., Boynton Beach, FL 33435.

34. At all times material hereto, Defendant JOSEPH was an employee, statutory employee, and/or agent of the AMAZON Defendants and VALPARAISO, and was acting within the course and scope of his employment and agency.

35. Jurisdiction is proper to this Court pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

36. Venue is proper to this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Crash giving rise to this civil action occurred within this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

37. The transportation of goods in interstate commerce constitutes an ultra-hazardous activity that presents substantial dangers to the driving public when not done safely, properly, and with due caution. Accordingly, there are federal regulations, state statutes, industry standards, and local ordinances that govern the qualification, training, supervision, and retention of professional

tractor-trailer drivers, the proper maintenance and equipment for commercial motor vehicles, and the safe operation of brokers, motor carriers, commercial motor vehicles, and professional truck drivers.

38. As part of a strategy to vertically integrate its operations and assume control over shipping and logistics traditionally handled by third-party carriers like FedEx and UPS, the AMAZON Defendants have developed, expanded, and deployed a logistics and transportation network to transport goods from manufacturers and retailers to Amazon warehouses, distribution centers, and customers nationwide, including Tennessee.

39. The AMAZON Defendants' vast logistics and transportation network is managed by AMAZON LOGISTICS.

40. As part of this strategy, the AMAZON Defendants routinely enter into contracts with transportation companies and delivery partners to ensure that items purchased by customers are picked up from the shippers and delivered timely to the customers.

41. At all times pertinent, the AMAZON Defendants used various programs designed to ensure rapid package delivery, with an emphasis on adherence to delivery schedules assigned by the AMAZON Defendants, so the AMAZON Defendants could meet promised delivery times to customers.

42. Upon information and belief, to reduce delivery costs, the AMAZON Defendants have engaged in a "race to the bottom" in the trucking industry, by lowering compensation rates for drivers and motor carriers below prevailing market levels, thereby discouraging qualified drivers and safety conscious carriers who can find work elsewhere.

43. In addition, the AMAZON Defendants encourage people with no experience driving commercial motor vehicles, and businesses with no experience operating interstate motor

carriers or trucking companies, to start their own trucking companies to transport goods for the AMAZON Defendants.

44. To obtain interstate motor carrier operating authority through the Federal Motor Carrier Safety Administration ("FMCSA"), a person or business is only required to complete an online application, pay $300, and show proof of the minimum insurance limits.

45. The AMAZON Defendants knew that to obtain interstate motor carrier operating authority from the FMCSA, a person or business is only required to complete an online application, pay $300, and show proof of the minimum insurance limits.

46. Once the application process is complete, a new entrant is typically granted interstate motor carrier operating authority in 30 to 60 days.

47. While the new applicant must agree to abide by the applicable Federal Motor Carrier Safety Regulations ("FMCSRs"), the FMCSA does not conduct any safety audit or investigation on whether the motor carrier applicant has appropriate safety management controls in place to comply with the FMCSRs before granting new entrants interstate motor carrier operating authority.

48. The AMAZON Defendants knew that while the new applicant must agree to abide by the applicable FMCSRs, the FMCSA does not conduct any safety audit or investigation on whether the motor carrier applicant has appropriate safety management controls in place to comply with the FMCSRs before granting new entrants interstate motor carrier operating authority.

49. These newly authorized motor carriers are designated "New Entrant" motor carriers and have no safety rating from the FMCSA, with a safety designation of "unrated."

50. The AMAZON Defendants also use other motor carriers that are not new entrants but that are also designated as "unrated," meaning they have not passed a safety audit by the

FMCSA verifying that the motor carrier has appropriate safety management controls in place to comply with the FMCSRs and to transport freight safely across the roadways of the United States.

51. Once the FMCSA conducts a safety audit or investigation, a motor carrier is assigned one of three ratings: satisfactory; conditional; or, unsatisfactory.

52. A "satisfactory" safety rating means "…a motor carrier has in place and functioning adequate safety management controls to meet the safety fitness standard prescribed in [49 C.F.R.] § 385.5."

53. A "conditional" safety rating means "…a motor carrier does not have adequate safety management controls in place to ensure compliance with the safety fitness standard that <u>could</u> result in occurrences listed in [49 C.F.R.] § 385.5(a) through (k)." (emphasis added).

54. An "unsatisfactory" safety rating means "…a motor carrier does not have adequate safety management controls in place to ensure compliance with the safety fitness standard which <u>has</u> resulted in occurrences listed in [49 C.F.R.] § 385.5(a) through (k)." (emphasis added).

55. The occurrences listed in 49 C.F.R. § 385.5(a) through (k) include, but are not limited to, the use of unqualified drivers; the improper use and driving of commercial motor vehicles; unsafe vehicles operating on highways; the use of fatigued drivers; and motor vehicle crashes.

56. The AMAZON Defendants utilize "unrated" motor carriers without any further investigation or inquiry into their safety management controls and/or safety history.

57. Once a company has obtained interstate operating authority, it can become part of Amazon's network by simply applying to "partner with Amazon" to haul loads of freight under their "Relay" program, despite having no safety rating and without any confirmation that the motor

carrier has the required safety management controls in place to ensure compliance with the appliable FMCSRs.

58. The FMCSRs are in place to ensure the safe movement of products through the transportation system and to reduce the risk of highway incidents resulting in fatalities, injuries, and property damage.

59. The AMAZON Defendants do not conduct any safety investigation into motor carriers or truck drivers beyond verifying current operating authority, proof of insurance, and that the motor carrier does not have a safety rating of "unsatisfactory."

60. The AMAZON Defendants exert control over the details of the work done by motor carriers and drivers using a variety of tools, including internal compliance teams and a third-party compliance monitoring service, to continually monitor motor carrier compliance with their policies and to make sure the companies deliver Amazon goods on time.

61. A motor carrier that partners with Amazon is required to use "Amazon Relay," which is a suite of technology products that enables carriers to self-register with Amazon and find, book, and execute Amazon loads.

62. To participate and remain eligible in the "Amazon Relay" program, a motor carrier must maintain an active retail customer account with Amazon.

63. Participating in the "Relay" program requires the motor carrier to enter into a legally binding agreement with Amazon. Amazon reserves the unilateral right to modify the terms of that agreement by issuing updated Terms of Service. Upon issuance of such updates, it is the responsibility of the motor carrier to remain informed of, and comply with, any changes to the Terms of Service.

64. As a condition of the aforementioned agreement, motor carriers are required to indemnify Amazon. The agreement prohibits carriers from settling claims or consenting to judgments without first obtaining Amazon's prior written approval. Additionally, Amazon retains sole discretion to assume control over the defense of any claim or dispute involving the carrier.

65. Amazon also reserves the unilateral right to impose mandatory safety training requirements on motor carriers and their personnel at any time. Carriers are obligated to complete any Amazon-designated training programs as directed, without the option to decline participation. Amazon requires all motor carriers and their drivers to use the "Amazon Relay" technology products in order to deliver Amazon loads.

66. Motor carriers use "Amazon Relay" to accept loads, assign drivers, access Amazon's Relay Load Board, track performance, view and download payment details, and report concerns, among other things.

67. Through the Load Board in "Amazon Relay", drivers and carriers can search for assignments in their area and book them.

68. Motor carriers access "Amazon Relay" through a web browser that enables them to access a Driver Roster and to view Amazon's grading of each driver's performance, in addition to the carrier's performance overall.

69. The performance score is based on four metrics: (a.) on-time performance; (b.) acceptance (a score can take a hit if a carrier rejects a tendered load); (c.) App usage (which provides real-time, minute-by-minute, location information); and (d.) disruption-free.

70. The performance score is not based on safety-related metrics including, for example, speeding and/or aggressive driving.

71. Upon information and belief, the performance metrics set unrealistic expectations that increases the risk that motor carriers and drivers will prioritize speed and performance over the safety of the motoring public.

72. The assignments on the Load Board are preset by Amazon to include details such as the departure time and location for the trip, arrival, and departure time for each stop along the way, and the required arrival time at the final destination.

73. Some loads involve connecting the motor carrier's semi-truck to a preloaded trailer and hauling the trailer to its destination in what is known as a "drop-and-hook" operation; others require the motor carrier or driver to supply the trailer.

74. Motor carriers working for Amazon do not negotiate payment; the payment amount is preset by Amazon into the Load Board for each assignment.

75. By the Amazon governing policies, the AMAZON Defendants reserve the authority to refuse or prevent any driver from running loads, by designating the driver as "ineligible" within Amazon's driver-profile screen.

76. Once a motor carrier books an assignment, the carrier must then assign a driver through "Amazon Relay," and the assignment appears on the driver's "Amazon Relay" phone app.

77. Once the truck driver is assigned to the load in the "Amazon Relay" phone app, the AMAZON Defendants no longer communicate with the motor carrier and all communications and instructions from the AMAZON Defendants are directly with the truck driver.

78. Drivers are required to log all designated milestones using the "Amazon Relay" app. Such milestones include arrival at origin, origin checkout, and arrival at destination. Failure to comply with the AMAZON Defendants' requirement to utilize the "Relay" application may

result in Amazon withholding payment, notwithstanding the completion of the trip and satisfactory performance of the services rendered.

79. Through Amazon's mobile-based "Relay" app for iOS and Android devices, drivers can view and manage load status, report delays, and use commercial navigation. Through the "Relay" App, drivers are also provided real time updates for road conditions, route changes, weather warnings, etc.

80. When a motor carrier or driver books a shipment through "Amazon Relay," the Load Board generates a map for navigation by the driver, dictating the exact route the driver is to follow and identifying each stop with numbers on the map and delivery times.

81. Amazon monitors the real-time location, speed, and driving time of drivers assigned to its routes through the "Amazon Relay" app. This data tracking functionality remains active even when the application is not actively in use by the driver.

82. Although drivers are permitted to arrive early at their destinations, the driver or the motor carrier is punished for arriving late.

83. The AMAZON Defendants therefore do know the identity of the actual drivers transporting their freight, and can and do control and monitor those drivers and the location of their loads through the "Amazon Relay" app.

84. Drivers are required to use the "Amazon Relay" app to report any delays and to update their estimated time of arrival. The Amazon Relay application also contains a Support Center, which provides tools for issue resolution and facilitates the involvement of Amazon personnel when necessary.

85. Amazon asserts exclusive ownership over all collected data generated by drivers and carriers via the "Relay" app and reserves the right to use or share that data at its sole discretion.

86. "Invoices" are automatically generated by the "Amazon Relay" app, with the pay week running from Sunday to Saturday and drivers/carriers typically getting money deposited in their bank accounts the following Friday.

87. While drivers and carriers are penalized for canceling a trip, Amazon may cancel or reschedule a load without notice at any time before the trip begins and can even redirect a driver mid-shipment.

88. If a motor carrier disputes an invoice issued by Amazon, it must initiate an internal dispute resolution process through the "Amazon Relay" platform and engage with Amazon's Dispute Resolution Team. This process includes a formal appeal procedure following Amazon's initial determination regarding the disputed invoice.

89. Motor carriers may submit requests for reimbursement through the "Amazon Relay" platform for additional expenses, including but not limited to toll receipts and unforeseen fuel costs. Reimbursement of such expenses may be conditioned upon the driver's compliance with the requirement to use the "Amazon Relay" mobile application.

90. Defendant VALPARAISO was subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring, retaining, training, and supervision of safe and qualified commercial truck drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including, without limitation, the minimum safety standards established by the applicable FMCSRs (49 CFR §§ 301-399), either directly or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.08 and pursuant to T.C.A. §§ 65-15-106, 65-15-111, and 65-15-113.

91. At all times material hereto, Defendant JOSEPH was a commercial motor vehicle operator driving a 2017 Freightliner tractor bearing VIN 3AKJGLDR9HSHR5618 ("Tractor") and

pulling an Amazon trailer ("Trailer") under the motor carrier operating authority of Defendant VALPARAISO and/or one or more of the AMAZON Defendants, as depicted here:




92. Accordingly, Defendant JOSEPH was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor vehicles and trailers including, without limitation, the minimum safety standards established by the applicable FMCSRs (49 CFR §§ 301-399), either directly or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.08 and pursuant to T.C.A. §§ T.C.A. §§ 65-15-106, 65-15-111, and 65-15-113.

93. Additionally, the AMAZON Defendants were subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor vehicles and trailers including, without limitation, the minimum safety standards established by the applicable FMCSRs (49 CFR §§ 301-399), either directly or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.08 and pursuant to T.C.A. §§ T.C.A. §§ 65-15-106, 65-15-111, and 65-15-113.

94. At all times material hereto, the Trailer towed by Defendant JOSEPH was owned by, leased to, and/or under the control and direction of one or more of the AMAZON Defendants.

95. At all times material hereto, one or more of the AMAZON Defendants loaded, leased, controlled, used, and gave Defendant JOSEPH permission to use the Trailer.

96. At all times material hereto, Defendant JOSEPH had the permission of the AMAZON Defendants to use the Tractor to transport the load hauled during the subject trip ("Load") for the benefit of AMAZON Defendants.

97. At all times material hereto, the AMAZON Defendants knew that Defendant JOSEPH was the actual truck driver assigned to transport the Load in question for the AMAZON Defendants.

98. At all times material hereto, Defendant JOSEPH was an employee, statutory employee, agent, apparent agent, and/or servant driving and performing services for Defendant VALPARAISO.

99. At all times material hereto, Defendant JOSEPH was an employee, statutory employee, agent, apparent agent, and/or servant driving and performing services for and under the direction and control of one or more of the AMAZON Defendants.

100. At the time of the Crash, Defendant JOSEPH was acting within the course and scope of said employment, agency, apparent agency, and/or service and subject to Defendant VALPARAISO and/or the AMAZON Defendants' control or right to control, such that Defendant VALPARAISO and/or the AMAZON Defendants should be considered his actual and/or statutory employer/principal.

101. One or more of the AMAZON Defendants controlled, operated, and/or managed the subject Tractor-Trailer at the time of the Crash, which was used for the transportation of property for compensation and therefore qualifies as a motor carrier under the law. Accordingly,

one or more of the AMAZON Defendants was the statutory employer/principal of Defendant JOSEPH.

102. At the time of the Crash, Defendants JOSEPH and VALPARAISO were acting within the course and scope of their employment, agency, apparent agency, and/or service of the AMAZON Defendants', subject to the AMAZON Defendants' control or right to control, such that Defendants JOSEPH and VALPARAISO should be considered the actual and statutory employee, agent, apparent agent, and/or servant of one or more of the AMAZON Defendants.

103. At all times material hereto, Defendants VALPARAISO and AMAZON LOGISTICS had non-delegable duties to ensure that their drivers and commercial motor vehicles were reasonably safe and complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on our roadways.

104. At all times material hereto, the AMAZON Defendants had non-delegable duties to ensure that the trucking companies and drivers they hired to deliver their goods throughout the United States in tractor-trailers and other commercial motor vehicles were reasonably safe and complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on our roadways.

105. At all times material hereto, the AMAZON Defendants had non-delegable duties to ensure the truck drivers they monitored and controlled were reasonably safe and complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on our roadways.

106. Each Defendant's acts and omissions, whether alone or in concert with those of other Defendants, directly and proximately caused the Crash and resulting damages claimed herein.

**THE WRECK**

107. Upon information and belief, at all times material hereto, Defendant VALPARAISO was an "unrated" motor carrier.

108. At all times material hereto, Defendant VALPARAISO had not "…demonstrate[d] it has adequate safety management controls in place, which function effectively to ensure acceptable compliance with applicable safety requirements to reduce the risks associated with," among other things, "(c) "[t]he use of unqualified drivers…, (d) [i]mproper use and driving of motor vehicles…, (e) [u]nsafe vehicles operating on the highways…, (g) [t]he use of fatigued drivers…, [and] (k) [m]otor vehicle accidents…." *See* 49 C.F.R. § 385.5.

109. The AMAZON Defendants knew, or reasonably should have known, that Defendant VALPARAISO, a motor carrier without a safety rating, was risker than a motor carrier with a "satisfactory" safety rating.

110. The AMAZON Defendants knew, or reasonably should have known, that it was required to perform a greater degree of due diligence to ensure that non-rated Defendant VALPARAISO had adequate safety management controls in place to reduce the risk of the occurrences specified above. *Id*.

111. Prior to the Crash, publicly available records of the FMCSA reflected that Defendant VALPARAISO had been cited for multiple safety-related violations, including but not limited to violations involving unsafe driving, hours-of-service compliance, false or inaccurate driver logs, unauthorized passengers in commercial motor vehicles, and driver licensing and endorsement deficiencies.

112. These violations were documented during roadside inspections occurring in the months preceding the Crash including, upon information and belief, the following driver

inspections resulting in Defendant VALPARAISO's drivers being placed out-of-service on two of four occasions where law enforcement detected violations:

| Date | Location of Inspection | Type of Inspection | Violations |
|---|---|---|---|
| February 27, 2025 | Saint George, South Carolina | Driver Inspection | **Driver declared out-of-service** |
| March 4, 2025 | Benson, Arizona | Driver Inspection | **Driver declared out-of-service** |
| March 10, 2025 | Kingsport, Tennessee | Driver Inspection | Driver found in violation |
| April 16, 2025 | North Carolina | Driver Inspection | Driver found in violation |

113. The FMCSRs define "out of service order" as "…a declaration by an authorized enforcement officer of a Federal, State, Canadian, Mexican, or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation is out of service pursuant to 49 C.F.R. 386.72, 392.5, 392.9a, 395.13, or 396.9, or compatible laws, or the North American Standard Out-of-Service Criteria." *See* 49 C.F.R. § 390.5.

114. As relates to commercial motor vehicles (i.e., tractor-trailers), "authorized personnel shall declare and mark 'out-of-service' any motor vehicle…**which by reason of its mechanical condition or loading would likely cause an accident or a breakdown**." *See* 49 C.F.R. § 396.9(c)(1) (emphasis added).

115. A driver being placed "out-of-service" is likewise a serious violation and can include such dangerous violations as the driver exceeding his/her maximum hours-of-service, falsifying logbooks, operating the commercial motor vehicle while fatigued or ill, and operating the commercial motor vehicle while under the influence of alcohol and/or drugs.

116. Upon information and belief, at all times material hereto, Defendant VALPARAISO's out-of-service rate for drivers and vehicles exceeded the national average:[1]




117. Before hiring Defendant JOSEPH and entrusting the Trailer and Load to him, the AMAZON Defendants and Defendant VALPARAISO were required to ensure, among other things, that he "[could], by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives." *See* 49 C.F.R. § 391.11(b)(3).

[1] https://www.searchcarriers.com/company/2912333 (last visited 4/1/26). Valparaiso's profile is no longer available on the FMCSA website subsequent to its revocation. A FOIA request to the FMCSA is pending.

118. Additionally, the AMAZON Defendants and Defendant VALPARAISO were required to ensure he "[could] read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." *See* 49 C.F.R. § 391.11(b)(2).

119. Upon information and belief, Defendant JOSEPH was not unable to safely operate the tractor-trailer, and was unable to read and speak the English language sufficiently to understand highway traffic signs and signals in the English language.

120. Before the Crash, Defendant JOSEPH was convicted of two moving violations operating a commercial motor vehicle:

| Date | Violation | Court |
|---|---|---|
| July 31, 2017 | Lane Use Restriction for Trucks | Marion Superior Court, Indiana, Case No. 49G13-1708-IF-037115 |
| September 12, 2022 | Excessive Vehicle Length | Rockbridge County District Court, Virginia, Case No. T22-5209 |

121. Additionally, on August 20, 2023, Defendant JOSEPH was involved in a motor vehicle collision on Interstate 95 in Broward County, Florida, on August 20, 2023, where he failed to stay in his lane and collided with a trailer home.

122. The Florida Highway Patrol cited Defendant JOSEPH for improper lane change; however, that citation was dismissed when the other driver failed to appear for the hearing.

123. Despite a safety record that created a foreseeable risk of harm to the motoring public, the AMAZON Defendants continued to partner with Defendants VALPARAISO and JOSEPH, place loads with these defendants, and entrusted their trailers to these defendants.

124. Upon information and belief, on about May 11, 2025, Defendant JOSEPH picked up the Load, in the AMAZON Defendant's Trailer and containing the AMAZON Defendants' freight, from an Amazon facility located in Florida for transport in interstate commerce.

125. Upon information and belief, the AMAZON Defendants, through the Relay App, generated a map for navigation by Defendant JOSEPH, dictating the exact route he was to follow from Florida in route to the state of Tennessee.

126. Upon information and belief, the AMAZON Defendants monitored Defendant JOSEPH's progress, including his location, speed, and driving time as he drove the Load from Florida to Tennessee.

127. The AMAZON Defendants knew that Defendant JOSEPH was transporting the Trailer containing Amazon's freight.

128. On May 11, 2025, at approximately 5:17 p.m., Defendant JOSEPH was driving the Trailer northbound on Interstate 75 in East Ridge, Tennessee, approaching the Interstate 75/24 interchange, a location within a multi-year, long-term highway construction project.

129. As he drove north on Interstate 75 into Tennessee, Defendant JOSEPH passed orange road construction signs advising northbound motorists of "Road Work" ahead, including at approximately two miles, one mile, and one-half mile before the scene of the Crash, as depicted in part in this TDOT video snip:



130. Upon information and belief, Defendant JOSEPH also passed stationary electronic signs warning of slowing/stopping traffic ahead.

131. Defendant JOSEPH failed to reduce his speed to the fifty-five (55) miles per hour speed limit as he approached the northbound East Ridge exit.

132. Defendant JOSEPH further failed to reduce his speed to the forty-five (45) mile per hour speed limit as he entered the highway construction zone.

133. Defendant JOSEPH failed to dedicate his full time and attention to the roadway and traffic ahead of him.

134. Defendant JOSEPH failed to look 12-15 seconds ahead of him (about a quarter mile at highway speeds).

135. Defendant JOSEPH failed to manage the space around the tractor-trailer.

136. Defendant JOSEPH failed to maintain a safe following distance from the vehicles traveling ahead of him.

137. The TDOT video footage confirms that Defendant JOSEPH entered the highway construction zone at a high rate of speed.

138. In the northbound lanes for the Interstate 24 Chattanooga exit, traffic had slowed with several vehicles stopped.

139. Despite clear daylight conditions, a straight roadway alignment, and dry pavement, Defendant JOSEPH maintained his speed and violently crashed into the rear of the vehicles ahead, initiating and causing a massive chain-reaction collision involving several vehicles, multiple post-crash fires, three deaths, and numerous injuries.

140. According to the police investigation and witness statements, Defendant JOSEPH was driving erratically prior to the collision, swerving between lanes and exhibiting reckless behavior.

141. As a result of the Crash, Defendant JOSEPH was indicted on three counts of vehicular homicide, two counts of reckless aggravated assault, and one count of reckless endangerment.

142. In relation to the criminal matter, a Judge determined that Defendant JOSEPH "…has a limited ability to understand and/or communicate in English" and found it necessary to appoint a Haitian Creole interpreter.

143. Additionally, on May 30, 2025, the operating authority of Defendant VALPARAISO was revoked.

144. One of the vehicles involved in the pileup was a Toyota Rav-4 operated by Plaintiff Laurie C. Eddy.

145. Upon information and belief, Defendant Joseph crashed into the rear of Plaintiff Laurie C. Eddy's vehicle.

146. In addition to other serious injuries, Plaintiff Laurie C. Eddy sustained a head injury when the impact forced her vehicle into vehicles ahead of her, deployed the airbags, and caused a computer monitor she was transporting to strike her in the head.

147. Plaintiff Laurie C. Eddy was a properly restrained driver who observed all applicable traffic laws.

148. No act of Plaintiff Laurie C. Eddy was a cause of the Crash.

149. No failure to act by Plaintiff Laurie C. Eddy was a cause of the Crash.

150. Plaintiff Laurie C. Eddy bears zero percent (0%) fault for the Crash.

151. Plaintiff Laurie C. Eddy was seriously injured as a result of the Crash.

152. Plaintiff George M. Eddy suffered the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

## COUNT 1
## NEGLIGENCE AS TO AMAZON.COM, INC.

153. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

154. AMAZON.COM, INC., by and through its employees, agents, subsidiaries, and contractors, and as an integral part of its business model and delivery promises, was regularly engaged in the transportation industry, arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States.

155. AMAZON.COM, INC. was the parent entity and mastermind of the AMAZON Defendants' scheme to put profits over safety by using unsafe and unrated motor carriers to deliver their goods to customers, without regard for the safety of the motoring public.

156. AMAZON.COM, INC. arranged and procured the transportation of freight for compensation, and in doing so, selected and retained Defendant VALPARAISO, the motor carrier that operated the Tractor-Trailer involved in the Crash.

157. Transportation of freight on Tennessee roadways by a tractor-trailer presents a foreseeable and grave risk of injury or death if an unsafe motor carrier or driver is selected, dispatched, or retained.

158. AMAZON.COM, INC. was in the best position to prevent harm to the motoring public by exercising reasonable care in screening, selecting, approving, dispatching, and retaining competent and safe motor carriers and drivers.

159. AMAZON.COM, INC. owed a duty to use reasonable care in the selection and retention of Defendants VALPAIRASO and JOSEPH.

160. AMAZON.COM, INC. created a foreseeable zone of danger to the public, including Plaintiff Laurie C. Eddy, by using unsafe, inexperienced, and unqualified motor carriers and drivers to move its goods in interstate commerce, including Defendants VALPARAISO and JOSEPH. Injuries and death to the motoring public, like Plaintiff Laurie C. Eddy, was the predictable consequence of AMAZON.COM, INC.'s decision to employ or authorize unfit, unqualified, unvetted, untrained, and/or dangerous operators using the roads and highways of Tennessee.

161. Upon information and belief, AMAZON.COM, INC. also had contractual duties with its product suppliers to only select "satisfactory" motor carriers that were safe, qualified, and able to move freight with proven or documented safety management controls in place.

162. AMAZON.COM, INC., by and through its employees, agents, subsidiaries, and contractors, undertook the duty to investigate, qualify, monitor, and select Defendant

VALPARAISO as a qualified motor carrier to move freight in interstate commerce for its customers.

163. AMAZON.COM, INC., through its unique business model, exercised and retained the right to control the movement of its goods, and regularly monitored the motor carriers and actual drivers delivering its freight.

164. AMAZON.COM, INC. knew or should have known of Defendant VALPARAISO's dangerous and risky propensities.

165. AMAZON.COM, INC. breached its duties by not recognizing the dangerous and risky propensities of Defendant VALPARAISO, by not utilizing or ignoring the information available regarding Defendant VALPARAISO, and by continuing to retain Defendant VALPARAISO to move its freight.

166. AMAZON.COM, INC. was or should have been aware that Defendant VALPARAISO used Defendant JOSEPH to move its freight.

167. Driving and operating the Tractor-Trailer involved in this Crash constituted work that involved the risk of physical harm unless it was skillfully and carefully done. AMAZON.COM, INC. knew or should have known this, but failed to take the necessary precautions with respect to this risk.

168. AMAZON.COM, INC. failed to enact and enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers, including Defendants VALPARAISO and JOSEPH, from violating state traffic laws and the FMCSRs while delivering goods for AMAZON.COM, INC.

169. AMAZON.COM, INC. failed to exercise reasonable control over the motor carriers and drivers it uses, including Defendants VALPARAISO and JOSEPH, thereby exposing other

motorists to unsafe acts and omissions of those dangerous motor carriers and drivers, such that those acts and omissions unreasonably created a foreseeable risk of harm.

170. AMAZON.COM, INC., by and through its employees, agents, subsidiaries, and contractors, breached its duties and was therefore negligent in one or more of the following ways:

(a) Failing to perform or improperly performing background, driving record, physical fitness, and/or character investigations that would have revealed Defendants VALPARAISO and/or JOSEPH were unsafe and/or incompetent to perform the task as assigned;

(b) Selecting, hiring, dispatching, and retaining Defendants VALPARAISO and/or JOSEPH, despite the existence and ready availability of subpar safety ratings and driving records, which were or should have been known to AMAZON.COM, INC., and which increased the likelihood that Defendants VALPARAISO and JOSEPH would cause a crash;

(c) Failing to verify and ensure that Defendant VALPARAISO hired drivers that would operate the Tractor-Trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

(d) Failing to perform or improperly performing review, audit, and selection actions verifying Defendants VALPARAISO and JOSEPH were knowledgeable of and in compliance with laws governing the safe inspection and operation of commercial motor vehicles;

(e) Failing to perform or improperly performing performance reviews and records checks that would have revealed Defendants VALPARAISO and JOSEPH were unfit to safely operate a commercial motor vehicle;

(f) Failing to actually review or take action on the significant amount of safety warnings and monitoring data that the AMAZON Defendants had through the "Amazon Relay" App, GPS, and other monitoring devices on the Tractor-Trailer regarding the dangerous driving and careless propensities of Defendants VALPARAISO and JOSEPH prior to the Crash and for the Load, including speeding and driving erratically;

(g) Entrusting a commercial vehicle to Defendant JOSEPH when it knew, or in the exercise of reasonable care should have known, that Defendant JOSEPH was unfit, incompetent, unsafe, or not otherwise qualified to operate the vehicle; and

(h) Failing to maintain and repair the Tractor-Trailer operated by Defendant JOSEPH on the day of the Crash.

171. AMAZON.COM, INC. undertook a duty to monitor, supervise, direct, and control Defendant JOSEPH on the day of the Crash regarding the delivery of the Load at issue, and in doing so, AMAZON.COM, INC. was negligent in failing to act carefully regarding the monitoring, control, and supervision of Defendant JOSEPH putting others, including Plaintiff Laurie C. Eddy, at an undue risk of harm.

172. The negligence of AMAZON.COM, INC. was a legal and proximate cause of the Crash and the serious injuries suffered by Plaintiff Laurie C. Eddy.

173. The injuries suffered by Plaintiff Laurie C. Eddy are the type that are foreseeable consequences of a negligent act.

174. The negligence of AMAZON.COM, INC. individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the damages suffered by Plaintiff Laurie C. Eddy, for which she is entitled to receive restitution for her past, present, and future economic and non-economic damages to the extent allowed by law.

175. As a direct and proximate result of the negligence of AMAZON.COM, INC., Plaintiff George M. Eddy has suffered and will continue to suffer the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

## COUNT 2
## NEGLIGENCE AS TO AMAZON.COM SERVICES LLC

176. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

177. AMAZON.COM SERVICES, by and through its employees, agents, related entities, affiliates, and contractors, and as an integral part of its business and delivery promises, was regularly engaged in the transportation industry and arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States.

178. AMAZON.COM SERVICES is a subsidiary of AMAZON.COM, INC. and a related entity to AMAZON LOGISTICS.

179. AMAZON.COM SERVICES, by and through its employees, agents, related entities, affiliates, and contractors, knew of, was an active participant in, and profited from the AMAZON Defendants' scheme to put profits over safety by using unsafe and unrated motor carriers to deliver Amazon and Amazon Sellers' goods to customers, without any regard for the safety of the motoring public.

180. AMAZON.COM SERVICES arranged and procured the transportation of freight for compensation, and in doing so, selected and retained Defendant VALPARAISO, the motor carrier that operated the Tractor-Trailer involved in the Crash.

181. AMAZON.COM SERVICES was in the best position to prevent harm to the motoring public by exercising reasonable care in screening, selecting, approving, dispatching, and retaining competent and safe motor carriers and drivers.

182. AMAZON.COM SERVICES owed a duty to use reasonable care in the selection and retention of Defendants VALPAIRASO and JOSEPH.

183. AMAZON.COM SERVICES created a foreseeable zone of danger to the public, including Plaintiff Laurie C. Eddy, by using unsafe, inexperienced, and unqualified motor carriers and drivers to move its goods in interstate commerce, including Defendants VALPARAISO and JOSEPH. Injury and death of those in the motoring public is a predictable consequence of the AMAZON Defendants' decision to use unfit, unqualified, unvetted, untrained, and/or dangerous operators on the roads and highways of the United States and specifically Tennessee.

184. Upon information and belief, AMAZON.COM SERVICES also had contractual duties with its product suppliers and Amazon Sellers to move their freight itself, and/or to only select "satisfactory" transporters/operators that were safe, qualified, and able to move freight with proven or documented safety management controls in place.

185. Upon information and belief, AMAZON.COM SERVICES, by and through its employees, agents, subsidiaries, and contractors, undertook the duty, contracted to, and did charge a fulfillment fee to its Amazon Sellers that specifically included the movement of the Amazon Sellers' products interstate throughout the Amazon warehouse system and, ultimately, delivery to the end customer that purchases the Amazon Sellers' products.

186. Accordingly, AMAZON.COM SERVICES charged for and was the actual motor carrier for the Load in question.

187. To the extent that AMAZON.COM SERVICES decided to use outside interstate motor carriers to meet its fulfillment obligations to Amazon Sellers, AMAZON.COM SERVICES had a duty to investigate, qualify, select, and monitor Defendant VALPARAISO to ensure it was a safe and qualified motor carrier to move freight in interstate commerce for the Amazon Sellers and its customers.

188. AMAZON.COM SERVICES, by and through its employees, agents, related entities, and contractors, undertook the duty to investigate, qualify, monitor, and select Defendant VALPARAISO as a qualified motor carrier to move freight in interstate commerce for its customers.

189. AMAZON.COM SERVICES, through its unique business model, exercised and retained the right to control the movement of its goods, and regularly monitored the motor carriers and actual drivers delivering its freight.

190. AMAZON.COM SERVICES breached its duties by and through its employees, agents, subsidiaries, and contractors, when it selected Defendant VALPARAISO, an unproven and dangerous operator with no FMCSA safety audit and a history of safety violations that showed it was unfit to be an operator for the AMAZON Defendants.

191. Prior to the Crash, publicly available records of the FMCSA reflected that Defendant VALPARAISO had been cited for multiple safety-related violations, including but not limited to violations involving unsafe driving, hours-of-service compliance, false or inaccurate driver logs, unauthorized passengers in commercial motor vehicles, and driver licensing and endorsement deficiencies. These violations were documented during roadside inspections occurring in the months preceding the Crash.

192. AMAZON.COM SERVICES knew or should have known of Defendant VALPARAISO's documented safety violations through reasonable investigation, monitoring, and review of FMCSA safety data, yet nevertheless selected, approved, and retained Defendant VALPARAISO to transport Amazon freight in interstate commerce, thereby exposing the motoring public to a foreseeable and unreasonable risk of harm.

193. AMAZON.COM SERVICES breached its duties by not recognizing the dangerous and risky propensities of Defendants VALPARAISO and JOSEPH, by not utilizing or ignoring the information available regarding Defendants VALPARAISO and JOSEPH, by continuing to retain Defendant VALPARAISO to move Amazon goods, and by not making Defendant JOSEPH ineligible to drive loads for the AMAZON Defendants.

194. AMAZON.COM SERVICES was or should have been aware that Defendant VALPARAISO used Defendant JOSEPH to move its freight.

195. Driving and operating the Tractor-Trailer involved in this Crash constituted work that involved the risk of physical harm unless it was skillfully and carefully done. AMAZON.COM SERVICES knew or should have known of this but failed to take the necessary precautions with respect to this risk.

196. AMAZON.COM SERVICES further failed to enact and/or enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers from violating state traffic laws and the FMCSRs while transporting goods for AMAZON.COM SERVICES.

197. AMAZON.COM SERVICES failed to take reasonable measures to ensure that the motor carriers and drivers it used, including Defendants VALPARAISO and JOSEPH, operated safely while transporting Amazon goods, thereby exposing other motorists to unsafe acts and

omissions of those dangerous motor carriers and drivers, such that those acts and omissions unreasonably created a foreseeable risk of harm.

198. AMAZON.COM SERVICES, by and through its employees, agents, related entities, and contractors, breached its duties and was therefore negligent in one or more of the following ways:

(a) Failing to perform or improperly performing background, driving record, physical fitness, and/or character investigations that would have revealed Defendants VALPARAISO and/or JOSEPH were unsafe and/or incompetent to perform the dangerous task as assigned;

(b) Selecting, hiring, dispatching, and retaining Defendants VALPARAISO and/or JOSEPH, despite the existence and ready availability of subpar safety ratings and driving records, which were or should have been known to AMAZON.COM SERVICES;

(c) Failing to verify and ensure that Defendant VALPARAISO hired drivers what would operate the Tractor-Trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

(d) Failing to perform or improperly performing review, audit, and selection actions verifying Defendants VALPARAISO and JOSEPH were knowledgeable of and in compliance with laws governing the safe inspection and operation of commercial motor vehicles;

(e) Failing to perform or improperly performing performance reviews and records checks that would have revealed Defendants VALPARAISO and JOSEPH were unfit to safely operate a commercial motor vehicle;

(f) Failing to actually review or take action on the significant amount of safety warnings and monitoring data that the AMAZON Defendants had through the "Amazon Relay" App, GPS, and other monitoring devices on the Tractor-Trailer regarding the dangerous driving and careless propensities of Defendants VALPARAISO and JOSEPH prior to the Crash and for the Load in question, including speeding and driving erratically;

(g) Entrusting a commercial vehicle to Defendant JOSEPH when it knew, or in the exercise of reasonable care should have known, that Defendant JOSEPH was unfit, incompetent, unsafe, or not otherwise qualified to operate the vehicle; and

(h) Failing to maintain and repair the Tractor-Trailer operated by Defendant JOSEPH on the day of the Crash.

199. AMAZON.COM SERVICES undertook a duty to monitor, supervise, direct, and control Defendant JOSEPH on the day of the Crash regarding the delivery of the Load at issue, and in doing so, AMAZON.COM, INC. was negligent in failing to act carefully regarding the monitoring, control, and supervision of Defendant JOSEPH putting others, including Plaintiff Laurie C. Eddy, at an undue risk of harm.

200. The negligence of AMAZON.COM SERVICES was a legal and proximate cause of the Crash and the serious injuries suffered by Plaintiff Laurie C. Eddy.

201. The injuries suffered by Plaintiff Laurie C. Eddy are the type that are foreseeable consequences of a negligent act.

202. The negligence of AMAZON.COM SERVICES individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the damages suffered by Plaintiff Laurie C. Eddy, for which she is entitled to receive restitution for her past, present, and future economic and non-economic damages to the extent allowed by law.

203. As a direct and proximate result of the negligence of AMAZON.COM SERVICES, Plaintiff George M. Eddy has suffered and will continue to suffer the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

**COUNT 3**
**NEGLIGENCE AS TO AMAZON LOGISTICS, INC.**

204. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

205. AMAZON LOGISTICS, by and through its employees, agents, related entities, affiliates, and contractors, and as an integral part of its business and delivery promises, was regularly engaged in the transportation industry and arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States.

206. AMAZON LOGISTICS is a subsidiary of AMAZON.COM, INC. and a related entity to AMAZON.COM SERVICES.

207. AMAZON LOGISTICS, by and through its employees, agents, related entities, affiliates, and contractors, knew of, was an active participant in, and profited from the AMAZON Defendants' scheme to put profits over safety by actually qualifying, contracting with, monitoring, retaining, and arranging for the delivery of Amazon products through unsafe and unrated motor carriers, including Defendants VALPARAISO and JOSEPH, without any regard for the safety of the motoring public.

208. AMAZON LOGISTICS arranged and procured the transportation of freight for compensation, and in doing so, selected and retained Defendant VALPARAISO, the motor carrier that operated the Tractor-Trailer involved in the Crash.

209. AMAZON LOGISTICS was in the best position to prevent harm to the motoring public by exercising reasonable care in screening, selecting, approving, dispatching, and retaining competent and safe motor carriers and drivers.

210. AMAZON LOGISTICS owed a duty to use reasonable care in the selection and retention of Defendants VALPAIRASO and JOSEPH.

211. AMAZON LOGISTICS created a foreseeable zone of danger to the public, including Plaintiff Laurie C. Eddy, by using unsafe, inexperienced, and unqualified motor carriers and drivers to move its goods in interstate commerce, including Defendants VALPARAISO and JOSEPH. Injury and death of those in the motoring public is a predictable consequence of the AMAZON Defendants' decision to use unfit, unqualified, unvetted, untrained, and/or dangerous operators on the roads and highways of the United States and specifically Tennessee.

212. Upon information and belief, AMAZON LOGISTICS also had contractual duties with its product suppliers and Amazon Sellers to move their freight itself, and/or to only select "satisfactory" motor carriers that were safe, qualified, and able to move freight with proven or documented safety management controls in place.

213. Upon information and belief, AMAZON LOGISTICS, by and through its employees, agents, subsidiaries, and contractors, undertook the duty, contracted to, and did charge a fulfillment fee to its Amazon Sellers that specifically included the movement of the Amazon Sellers' products interstate throughout the Amazon warehouse system and, ultimately, delivery to the end customer that purchases the Amazon Sellers' products.

214. Accordingly, AMAZON LOGISTICS charged for and was the actual motor carrier for the Load in question.

215. To the extent that AMAZON LOGISTICS decided to use outside interstate motor carriers to meet its fulfillment obligations to Amazon Sellers, AMAZON LOGISTICS had a duty to investigate, qualify, select, and monitor Defendant VALPARAISO to ensure it was a safe and qualified motor carrier to move freight in interstate commerce for the Amazon Sellers and its customers.

216. AMAZON LOGISTICS, by and through its employees, agents, related entities, and contractors, undertook the duty to investigate, qualify, monitor, and select Defendant VALPARAISO as a qualified motor carrier to move freight in interstate commerce for its customers.

217. AMAZON LOGISTICS, through its unique business model, exercised and retained the right to control the movement of its goods, and regularly monitored the motor carriers and actual drivers delivering its freight.

218. AMAZON LOGISTICS breached its duties by and through its employees, agents, subsidiaries, and contractors, when it selected Defendant VALPARAISO, an unproven and dangerous operator with no FMCSA safety audit and a history of safety violations that showed it was unfit to be an operator for the AMAZON Defendants.

219. AMAZON LOGISTICS knew or should have known of Defendant VALPARAISO's documented safety violations through reasonable investigation, monitoring, and review of FMCSA safety data, yet nevertheless selected, approved, and retained Defendant VALPARAISO to transport Amazon freight in interstate commerce, thereby exposing the motoring public to a foreseeable and unreasonable risk of harm.

220. AMAZON LOGISTICS breached its duties by not recognizing the dangerous and risky propensities of Defendants VALPARAISO and JOSEPH, by not utilizing or ignoring the

information available regarding Defendants VALPARAISO and JOSEPH, by continuing to retain Defendant VALPARAISO to move Amazon goods, and by not making Defendant JOSEPH ineligible to drive loads for the AMAZON Defendants.

221. AMAZON LOGISTICS was or should have been aware that Defendant VALPARAISO used Defendant JOSEPH to move its freight.

222. Driving and operating the Tractor-Trailer involved in this Crash constituted work that involved the risk of physical harm unless it was skillfully and carefully done.

223. AMAZON LOGISTICS knew or should have known of this but failed to take the necessary precautions with respect to this risk.

224. AMAZON LOGISTICS further failed to enact and/or enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers from violating state traffic laws and the FMCSRs while transporting goods for AMAZON LOGISTICS.

225. AMAZON LOGISTICS failed to exercise reasonable control over the motor carriers and drivers it uses, including Defendants VALPARAISO and JOSEPH, to make sure they operated safely while transporting Amazon goods, thereby exposing other motorists to unsafe acts and omissions of those dangerous motor carriers and drivers, such that those acts and omissions unreasonably created a foreseeable risk of harm.

226. AMAZON LOGISTICS, by and through its employees, agents, related entities, and contractors, breached its duties and was therefore negligent in one or more of the following ways:

(a) Failing to perform or improperly performing background, driving record, physical fitness, and/or character investigations that would have revealed Defendants VALPARAISO and/or JOSEPH were unsafe and/or incompetent to perform the dangerous task as assigned;

(b) Hiring and retaining Defendants VALPARAISO and/or JOSEPH, despite the existence and ready availability of subpar safety ratings and driving records, which were or should have been known to AMAZON LOGISTICS;

(c) Failing to verify and ensure that Defendant VALPARAISO hired drivers that would operate the Tractor-Trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

(d) Failing to perform or improperly performing review, audit, and selection actions verifying Defendants VALPARAISO and JOSEPH were knowledgeable of, and in compliance with, laws governing the safe inspection and operation of commercial motor vehicles;

(e) Failing to perform or improperly performing performance reviews and records checks that would have revealed Defendants VALPARAISO and JOSEPH were unfit to safely operate a commercial motor vehicle;

(f) Failing to actually review or take action on the significant amount of safety warnings and monitoring data that the AMAZON Defendants had through the "Amazon Relay" App, GPS, and other monitoring devices on the Tractor-Trailer regarding the dangerous driving and careless propensities of Defendants VALPARAISO and JOSEPH prior to the Crash and for the Load in question, including speeding and driving erratically;

(g) Entrusting a commercial vehicle to Defendant JOSEPH when it knew, or in the exercise of reasonable care should have known, that Defendant JOSEPH was unfit, incompetent, unsafe, or not otherwise qualified to operate the vehicle; and

(h) Failing to maintain and repair the Tractor-Trailer operated by Defendant JOSEPH on the day of the Crash.

227. AMAZON LOGISTICS undertook a duty to monitor, supervise, direct, and control Defendant JOSEPH on the day of the Crash regarding the delivery of the Load at issue, and in doing so, AMAZON LOGISTICS was negligent in failing to act carefully regarding the monitoring, control, and supervision of Defendant JOSEPH putting others, including Plaintiff Laurie C. Eddy, at an undue risk of harm.

228. The negligence of AMAZON LOGISTICS was a legal and proximate cause of the Crash and the serious injuries suffered by Plaintiff Laurie C. Eddy.

229. The injuries suffered by Plaintiff Laurie C. Eddy are the type that are foreseeable consequences of a negligent act.

230. The negligence of AMAZON.COM SERVICES individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the damages suffered by Plaintiff Laurie C. Eddy, for which she is entitled to receive restitution for her past, present, and future economic and non-economic damages to the extent allowed by law.

231. As a direct and proximate result of the negligence of AMAZON LOGISTICS, Plaintiff George M. Eddy has suffered and will continue to suffer the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

## COUNT IV
## VICARIOUS LIABILITY OF AMAZON DEFENDANTS

232. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

233. Prior to the Crash, AMAZON.COM, INC., by and through its employees, agents, subsidiaries, related entities, and contractors, had already hired, selected, employed, retained, and/or otherwise engaged the services of Defendants VALPARAISO and JOSEPH to perform core

tasks for and on behalf of the AMAZON Defendants, including the delivery of goods in interstate commerce and on Tennessee roadways.

234. The Crash occurred while Defendants VALPARAISO and JOSEPH were actively performing core tasks for, on behalf of, and under the direction and control of the AMAZON Defendants.

235. Additionally, at all times material, AMAZON LOGISTICS operated as a motor carrier engaged in interstate commerce and, as part of this business, AMAZON LOGISTICS owned and/or controlled the Trailer.

236. Further, upon information and belief, AMAZON LOGISTICS was the motor carrier listed on the bill of lading, the motor carrier listed in the transportation agreements and Amazon's own documentation for the Load in question, and/or was otherwise in control of and gave directions to Defendants VALPARAISO and JOSEPH for purposes of, and during the course and scope of, the transportation of the Load in the Trailer at the time of the Crash.

237. On the date of the Crash, Defendants VALPARAISO and/or JOSEPH were acting as the agent of the AMAZON Defendants since:

(a) The AMAZON Defendants, by and through its employees, agents, subsidiaries, related entities, and contractors, knew and acknowledged that Defendant VALPARAISO and its driver Defendant JOSEPH would act for and on behalf of the AMAZON Defendants by transporting goods for the AMAZON Defendants;

(b) Defendants VALPARAISO and/or JOSEPH accepted that undertaking and were transporting goods for the AMAZON Defendants at the time of the Crash; and

(c) The AMAZON Defendants, by and through its employees, agents, subsidiaries, related entities, and contractors, managed, exercised control, and retained the right to

exercise control over Defendants VALPARAISO and/or JOSEPH and the details of the services to be performed while acting within the scope and agency transporting goods for the AMAZON Defendants in interstate commerce, including without limitation by: actively managing, monitoring, and controlling the transportation services for the Load in question; controlling the route and time of delivery; providing tools necessary to complete the transportation such as the Trailer and the application software to arrange for, track, communicate with, and get paid for the Load in question; and by loading and maintaining the Trailer. Therefore, Defendants VALPARAISO and/or JOSEPH were the employees/agents of the AMAZON Defendants.

238. The AMAZON Defendants controlled, operated, and/or managed the Tractor-Trailer at the time of the Crash, which was used for the transportation of property for compensation and therefore qualifies as a motor carrier under the law. Accordingly, one or more of the AMAZON Defendants was the statutory employer/principal of Defendants VALPARAISO and/or JOSEPH, and as the statutory employer, they are vicariously liable for the acts of Defendants VALPARAISO and/or JOSEPH.

239. Defendants VALPARAISO and JOSEPH were acting as the AMAZON Defendants' agents and/or statutory employees, and the AMAZON Defendants are vicariously liable for Defendants VALPARAISO and JOSEPH's negligence committed within the course and scope of that agency.

240. Alternatively, the AMAZON Defendants are vicariously liable under theories of actual agency, apparent agency, joint venture, alter ego, and/or nondelegable duty, to the extent supported by the evidence.

241. The AMAZON Defendants are liable for the acts and omissions constituting negligence and recklessness of Defendants VALPARAISO and JOSEPH, arising out of the work and services performed by Defendants VALPARAISO and/or JOSEPH on behalf of the AMAZON Defendants.

242. The negligence of the AMAZON Defendants' agents, Defendants VALPARAISO and JOSEPH, was a legal and proximate cause of the Crash and the serious injuries suffered by Plaintiff Laurie C. Eddy.

243. The injuries suffered by Plaintiff Laurie C. Eddy are the type that are foreseeable consequences of a negligent act.

244. The negligence of the AMAZON Defendants' agents, Defendants VALPARAISO and JOSEPH, either individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the damages suffered by Plaintiff Laurie C. Eddy, for which she is entitled to receive restitution for her past, present, and future economic and non-economic damages to the extent allowed by law.

245. As a direct and proximate result of the negligence of AMAZON Defendants' agents, Defendants VALPARAISO and JOSEPH, Plaintiff George M. Eddy has suffered and will continue to suffer the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

## **COUNT 5**
## **NEGLIGENCE AS TO VALPARAISO TRUCKING CORP**

246. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

247. Defendant VALPARAISO owed the motoring public, including Plaintiff Laurie C. Eddy, a duty to transport or arrange for transport of the Load with due care and failed to do so.

248. Defendant VALPARAISO undertook to transport or arrange for the transport of the subject Load in a commercial motor vehicle and therefore owed the motoring public, including Plaintiff Laurie C. Eddy, the duty to perform that undertaking in a reasonably prudent manner, which it breached as alleged herein.

249. Defendant JOSEPH was unqualified to operate a commercial motor vehicle and had dangerous propensities that reasonable investigation by Defendant VALPARAISO would have revealed through routine driver-qualification, safety-record checks, and performance reviews.

250. Defendant VALPARAISO had non-delegable duties to ensure that its drivers and vehicles were properly trained, monitored, reasonably safe, and complied with all applicable FMCSRs, state laws, company policies, and industry standards concerning the safe equipment, maintenance, inspection, and operation of commercial motor vehicles in interstate commerce.

251. Defendant VALPARAISO had an independent duty to act reasonably in hiring, instructing, training, supervising, monitoring, and retaining its drivers and other employees and agents, including Defendant JOSEPH; to promulgate and enforce policies, procedures, and rules to ensure that its drivers and vehicles were reasonably safe; that its drivers knew of and abided by all state and federal laws, statutes, regulations and industry standards governing the safe operation of commercial motor vehicles; and to exercise reasonable care in entrusting its vehicles and equipment to reasonably safe, responsible, competent, and qualified drivers.

252. Defendant VALPARAISO, through its officers, agents, apparent agents, employees, contractors, and servants, breached those duties, one or more of which were nondelegable, in one or more of, but not limited to the following ways:

(a) Negligently hiring, contracting with, and retaining Defendant JOSEPH to drive commercial motor vehicles despite being unfit and unqualified;

(b) Failing to properly train and instruct Defendant JOSEPH on the required knowledge of the FMCSRs, including without limitation, safe driving, hours of service limitations, visual search, speed management, space management, hazard perception and avoidance, defensive driving, emergency maneuvers, distracted driving, cell phone and electronic use prohibitions, and not driving if he is ill or fatigued;

(c) Failing to retrain or properly retrain Defendant JOSEPH when Defendant VALPARAISO knew or should have known of his dangerous activities while driving commercial motor vehicles and personal vehicles;

(d) Failing to supervise Defendant JOSEPH to verify that he operated the Tractor-Trailer in a reasonably safe manner and abided by all state laws and federal regulations governing the safe operation of commercial motor vehicles;

(e) Failing to adopt, train, and enforce written and unwritten company safety policies and systems, pertaining to the hiring, training, and monitoring of its drivers, and the safe operation and maintenance of commercial motor vehicles;

(f) Violating the applicable rules, laws, and regulations pertaining to and governing the safe inspection, maintenance, and operation of commercial motor vehicles;

(g) Failing to have an effective auditing system in place to audit its drivers' logs, or if they did have a system in place, they failed to utilize the system properly;

(h) Placing more emphasis on profits than on the safety of its drivers and the motoring public;

(i) Knowingly violating federal and state laws regarding the responsibilities of motor carriers and the safe operation of commercial motor vehicles;

(j) Failing to act upon and remedy known violations of the FMCSA regulations;

(k) Failing to act upon and remedy known violations of industry standards;

(l) Acting in conscious disregard for the rights and safety of the motoring public;

(m) Having a negligent mode of operation and poor safety culture that created a danger to all motorists exposed to its commercial vehicle drivers, including Plaintiff Laurie C. Eddy;

(n) Habitually and recklessly disregarding state and federal laws and regulations and industry standards governing the safe hiring, training, and retention of tractor-trailer drivers, the safe operation of a motor carrier, and the safe operation of commercial motor vehicles, such that it created a culture of danger and zone of risk that was reasonably anticipated to cause injury and death to the traveling public and constituted a dangerous mode of operation;

(o) Failing to exercise reasonable care under all of the surrounding circumstances;

(p) Entrusting a commercial vehicle to Defendant JOSEPH when it knew, or in the exercise of reasonable care should have known, that Defendant JOSEPH was unfit, incompetent, unsafe, or not otherwise qualified to operate the vehicle; and

(q) Failing to maintain and repair the Tractor-Trailer operated by Defendant JOSEPH on the day of the Crash.

253. Defendant VALPARAISO, through its agents and employees, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

(a) The risks associated with unqualified and unsafe drivers, including drivers who were incapable of reading signs warning of slowing and stopping traffic;

(b) The risks associated with failing to train drivers to obey the FMCSR;

(c) The risks associated with failing to train drivers to follow minimum driving standards for commercial drivers;

(d) The risks associated with failure to ensure its routes could be driven within the hours-of-service regulations;

(e) Requiring drivers to meet unrealistic driving goals which it knew, had reason to know, or should have known would cause its drivers to violate the hours-of-service regulations and drive while fatigued;

(f) The risks associated with failing to have adequate risk management policies and procedures in place;

(g) Failing to have policies and procedures in place to identify undertrained and unqualified drivers;

(h) Failing to have policies and procedures in place to ensure that its drivers did not drive while distracted or fatigued;

(i) Failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Defendant JOSEPH once he was hired;

(j) Failure to appropriately implement and enforce minimally adequate maintenance of its trucks and trailers;

(k) Failing to implement and follow a written safety plan; and

(l) Failing to use the composite knowledge reasonably available to it to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk.

254. The negligence of Defendant VALPARAISO was a legal and proximate cause of the Crash and the serious injuries suffered by Plaintiff Laurie C. Eddy.

255. The injuries suffered by Plaintiff Laurie C. Eddy are the type that are foreseeable consequences of a negligent act.

256. The negligence of Defendant VALPARAISO individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the damages suffered by Plaintiff Laurie C. Eddy, for which she is entitled to receive restitution for her past, present, and future economic and non-economic damages to the extent allowed by law.

257. As a direct and proximate result of the negligence of Defendant VALPARAISO, Plaintiff George M. Eddy has suffered and will continue to suffer the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

## COUNT 6
## VICARIOUS LIABILITY OF VALPARAISO TRUCKING CORP

258. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

259. Prior to the Crash, Defendant VALPARAISO, by and through its employees, agents, subsidiaries, and contractors, had already hired, selected, employed, retained, and/or otherwise engaged the services of Defendant JOSEPH to perform core tasks for and on behalf of Defendant VALPARAISO, including the delivery of goods in interstate commerce and on Tennessee roadways.

260. The Crash occurred while Defendant JOSEPH was actively performing core tasks for, on behalf of, and under the direction and control of Defendant VALPARAISO.

261. On the date of the Crash, Defendant JOSEPH was acting as the agent of Defendant VALPARAISO since:

(a) Defendant VALPARAISO, by and through its employees, agents, subsidiaries, and contractors, knew and acknowledged that Defendant JOSEPH would act for and on behalf of Defendant VALPARAISO by delivering goods for Defendant VALPARAISO and the AMAZON Defendants;

(b) Defendant JOSEPH accepted that undertaking and was delivering goods for Defendant VALPARAISO and the AMAZON Defendants at the time of the Crash; and

(c) Defendant VALPARAISO, by and through its employees, agents, subsidiaries, and contractors, exercised control and/or reserved the right to exercise control over Defendant JOSEPH and the details of the services to be performed while acting within the scope of the agency delivering goods for Defendant VALPARAISO and the AMAZON Defendants.

262. At all material times hereto, Defendant JOSEPH was acting within the course and scope of his employment, agency, or contractual service on behalf of Defendant VALPARAISO, and performing duties assigned or controlled by Defendant VALPARAISO.

263. Regardless of the employment relationship, Defendant VALPARAISO is the registered owner of U.S. DOT number 2912333 and Motor Carrier number MC-981389 displayed on the Tractor involved in this Crash and is therefore responsible for the acts of the driver of that vehicle.

264. Defendant VALPARAISO is liable for the acts and omissions constituting negligence and recklessness of Defendant JOSEPH while moving or transporting goods under Defendant VALPARAISO's operating authority, arising out of the work and services performed by Defendant JOSEPH on behalf of Defendant VALPARAISO and the AMAZON Defendants.

265. The negligence of Defendant VALPARAISO's agent, Defendant JOSEPH, was a legal and proximate cause of the Crash and the serious injuries suffered by Plaintiff Laurie C. Eddy.

266. The injuries suffered by Plaintiff Laurie C. Eddy are the type that are foreseeable consequences of a negligent act.

267. The negligence of Defendant VALPARAISO's agent, Defendant JOSEPH, either individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the damages suffered by Plaintiff Laurie C. Eddy, for which she is entitled to receive restitution for her past, present, and future economic and non-economic damages to the extent allowed by law.

268. As a direct and proximate result of the negligence of Defendant VALPARAISO's agent, Defendant Joseph, Plaintiff George M. Eddy has suffered and will continue to suffer the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

**COUNT 7**
**NEGLIGENCE AS TO ANTOINIER JOSEPH**

269. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

270. At all times material hereto, Defendant JOSEPH had the duty to maintain and operate the Tractor-Trailer in a reasonable and safe manner and to know of and abide by all state and federal laws, statutes, regulations and industry standards governing the safe operation of commercial motor vehicles.

271. Defendant JOSEPH failed to exercise due care to avoid colliding with any other motor vehicle by failing to:

(a) Maintain a safe speed;

(b) Maintain a safe lookout;

(c) Keep the Tractor-Trailer under control; and

(d) By devoting his full time and attention to the operation of the Tractor-Trailer.

272. Defendant JOSEPH further breached the duties he owed to the motoring public, including Plaintiff Laurie C. Eddy, and was therefore negligent in the operation and/or maintenance of the Tractor-Trailer in one or more of the following ways:

(a) Failing to systematically inspect, repair, and maintain the Tractor-Trailer;

(b) Failing to ensure that the Tractor-Trailer was in safe operating condition;

(c) failed to maintain a proper lookout;

(d) failed to conduct a proper visual search for potential hazards on the roadway;

(e) failed to operate the Tractor-Trailer at a safe and prudent speed;

(f) failed to maintain a safe following distance;

(g) failed to keep the Tractor-Trailer under control;

(h) failed to operate the Tractor-Trailer in a safe and prudent manner in view of the conditions which existed at the time of the wreck;

(i) operated the Tractor-Trailer while fatigued;

(j) operated the Tractor-Trailer while distracted;

(k) failed to operate the Tractor-Trailer in a manner considerate of the safety and lives of the other persons lawfully on the road;

(l) failed to operate the Tractor-Trailer in accordance with generally accepted safety principles and practices in the trucking industry;

(m) drove in a negligent and careless manner;

(n) drove in a reckless manner; and

(o) such other actions or inactions that may be shown at a hearing of this cause.

273. Defendant JOSEPH was negligent *per se* in that he violated one or more statutes of the State of Tennessee ("Rules of the Road"), which are enacted to protect the motoring public, including, but not limited to:

(a) T.C.A. § 55-8-123(1) Failure to maintain lane;

(b) T.C.A. § 55-8-124(a) Following too closely;

(c) T.C.A. § 55-8-136(b) Drivers to exercise due care;

(d) T.C.A. § 55-8-142(a) Turning movements;

(e) T.C.A. § 55-8-152/153 Speed limits / speed zones; and

(f) T.C.A. § 55-10-205 Reckless Driving.

274. Defendant JOSEPH will also be shown at trail to have violated one or more of the FMCSRs which likewise are enacted to protect the motoring public and constitutes negligence *per se* and/or evidence of negligence including, but not limited to:

(a) § 383.111(a)(1) Required Knowledge—Safe Operations Regulations;

(b) § 383.111(a)(20) Required Knowledge—Fatigue & Awareness;

(c) § 383.113(c) Required Skills—Safe on-road driving skills;

(d) § 390.3(e) Knowledge of and compliance with the regulations;

(e) § 391.21 Application for employment;

(f) § 391.25 Annual inquiry and review of driving record;

(g) § 392.1 Driving of Commercial Motor Vehicles – scope;

(h) § 392.2 Applicable operating rules;

(i) § 392.3 Ill or fatigued operator;

| | | |
|---|---|---|
| (j) | § 395.3 | Maximum Driving Time (Hours of Service); |
| (k) | § 395.8 | Driver's Record of Duty Status; |
| (l) | § 396.3 | Systematic inspection, repair, and maintenance; |
| (m) | § 396.7 | Unsafe operations forbidden; and |
| (o) | § 396.13 | Driver inspection. |

275. Defendant JOSEPH negligently and carelessly breached the duties he owed to the driving public, including Plaintiff Laurie C. Eddy, and violated laws that were intended to protect other road users like Plaintiff Laurie C. Eddy.

276. The negligence of Defendant JOSEPH was a legal and proximate cause of the Crash and the serious injuries suffered by Plaintiff Laurie C. Eddy.

277. The injuries suffered by Plaintiff Laurie C. Eddy are the type that are foreseeable consequences of a negligent act.

278. The negligence of Defendant JOSEPH individually, or combined and concurring with the negligence of the other defendants, was a legal and proximate cause of the damages suffered by Plaintiff Laurie C. Eddy, for which she is entitled to receive restitution for her past, present, and future economic and non-economic damages to the extent allowed by law.

279. As a direct and proximate result of the negligence of Defendant JOSEPH, Plaintiff George M. Eddy has suffered and will continue to suffer the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy.

## DAMAGES

280. Plaintiffs reallege and incorporate every allegation and fact contained in this pleading as though set forth fully herein.

281. As a direct and proximate result of the Defendants' negligence, Plaintiffs were made to suffer economic and non-economic damages of a type for which the law allows them to seek restitution from Defendants.

282. The damages suffered by Plaintiffs falls within the foreseeable range of harms that result from Defendants' negligence.

283. As set forth herein, each of the Defendants acted in a willful, wanton and reckless manner which either alone, or combined and concurring with the actions of the other Defendants' acts of negligence, directly and proximately caused the collision and Plaintiffs' injuries and damages.

284. Defendants knowingly, intentionally, recklessly, and/or willfully disregarded the Federal Motor Carrier Safety Regulations, Tennessee Statutes, and/or minimum industry standards.

285. Defendants' conduct constituted a conscious disregard for the life and safety of the Plaintiff Laurie C. Eddy, and for the lives and safety of the motoring public generally, and these Defendants are therefore liable for exemplary or punitive damages.

**PRAYER**

WHEREFORE, Plaintiffs pray for the following relief:

1. A trial by jury on all issues so triable;
2. That summons issue requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;
3. For judgment against Defendants in favor of Plaintiff Laurie C. Eddy in an amount the jury believes to be just, fair, and equitable, given the facts and after hearing the

issues in this case, not to exceed the sum of one million dollars ($2,000,000), as restitution for her past, present, and future economic and non-economic damages;

4. For judgment against Defendants in favor of Plaintiff George M. Eddy in an amount the jury believes to be just, fair, and equitable, given the facts and after hearing the issues in this case, not to exceed the sum of two hundred and fifty thousand dollars ($250,000), as compensatory damages for the loss of companionship, services, and consortium of his wife, Plaintiff Laurie C. Eddy;

5. For an award of punitive damages against Defendants in an amount the jury believes to be just, fair, and equitable not to exceed the sum of one million dollars ($1,000,000);

6. Interest, court costs, and discretionary costs, as appropriate; and

7. For all such further and general relief which this Court deems just and proper.

**This 1st day of May 2026.**

Respectfully submitted,


**TRUCK WRECK JUSTICE, PLLC**

BY: _*/s/ Danny R. Ellis*_________________
**DANNY R. ELLIS BPR# 020747**
**JAMIE R. GUERRETTE, BPR #039218**
danny@truckwreckjustice.com
jamie@truckwreckjustice.com
1419 Market Street
Chattanooga, Tennessee 37402
Telephone: (423) 265-2020
Facsimile: (423) 265-2025

**DEVONLAW, PLLC**

BY: _*/s/ Devon M. Williamson*_________________
**DEVON M. WILLIAMSON, BPR #037577**
dwilliamson@devonlawtn.com
1101 Chapel Ave., Suite 102

Nashville, TN 37206
Telephone: (615) 623-0232
Facsimile: (615) 623-0233

*Attorneys for Plaintiff Laurie Eddy*